**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO**
Eastern Division

| | |
|---|---|
| **ISRAEL J. CIPTAK**<br>856 Smithfield Drive #1804<br>Northfield, OH 44067<br><br>Plaintiff,<br><br>v.<br><br>**OHIO DEPARTMENT OF TRANSPORTATION**<br>c/o Jack Marchbanks, Director<br>1980 West Broad Street<br>Columbus OH 43223<br><br>Defendant. | **COMPLAINT**<br><br><br><br><br><br>Case No. _____<br><br><br><br><br><br>**JURY DEMAND ENDORSED HEREIN** |

Now comes Plaintiff, Israel Ciptak, by and through undersigned counsel, and for his Complaint against Defendant states as follows:

## PARTIES

1. Plaintiff Israel Ciptak [hereinafter "Plaintiff"] is an individual male residing in Northfield, Ohio, Summit County.

2. Defendant Ohio or Ohio ODOT, operating in agency form as the Ohio Department of Transportation ["ODOT"], is a public agency doing business in the state of Ohio for the purposes of maintaining certain public transportation districts.

## JURISDICTION AND VENUE

3. Plaintiff's claims arise under Title VII of the Civil Rights Act. Jurisdiction is predicated on 29 U.S.C. 1132.

4. Plaintiff received a Dismissal and Notice of Suit Rights from the Equal Employment Opportunity Commission, with a mailed date of September 23, 2020,

therefore Plaintiff's Complaint is timely filed within the 90-day deadline from receipt of the notice.

5. Most of the events giving rise to this Complaint occurred in the Northern District of Ohio, Eastern Division, therefore venue is proper.

## FACTUAL BACKGROUND

6. Plaintiff became employed as a highway maintenance worker with ODOT on November 2, 1998.

7. Plaintiff received several promotions over the years and currently works as a Safety and Health Program Consultant in the Business and Human Resources/Safety Department of ODOT District 12.

8. In May 2019 Plaintiff became disabled with a non-work related back injury; surgery was scheduled.

9. Plaintiff's last day of work was May 8, 2019; Plaintiff took FMLA leave until May 13, 2019.

10. Plaintiff then applied for and was approved for disability.

11. Plaintiff's first surgery did not resolve his back injury; doctors performed a second surgery, thereby prolonging Plaintiff's recovery.

12. While on disability, Plaintiff filed to extend his disability leave.

13. In approximately May or June 2019, Patrice Yacko, Human Resources Manager, threatened Plaintiff with termination; Ms. Yacko, acting on behalf of Defendant, told Plaintiff that "he would be considered UA and that she was not going to approve any more time off, especially since I know that there are people who have used way more

FMLA time than their certifications allowed and nothing was ever said and done;" Ms. Yacko made clear to Plaintiff that he would not be afforded this same consideration.

14. Plaintiff learned in November 2019 that his disability was running out.

15. Plaintiff received a letter from the Department of Administrative Services that his disability would run out November 27, 2019.

16. Plaintiff had been making progress in his recovery and had just started physical therapy in late October, 2019; Plaintiff's doctor completed a work capacity form/ return to work form approving him to return to work on December 11, 2019 with some restrictions.

17. Plaintiff's restrictions did not affect his position as his work at that time did not require him to lift, push, or pull anything, nor did it require him to drive more than 10% of the time; similarly, alternating between sitting and standing and/or walking would not affect his job.

18. Plaintiff's restrictions included limiting him to 10 work hours a day, limiting driving to total time of 3 hours a day (shift), allowing him to adjust positions every 5 minutes or so during meetings from sitting to standing & walking, limiting his lifting to under 20 pounds, limiting his bending and reaching.

19. The restrictions did not affect Plaintiff's duties as a Safety and Health Program Coordinator.

20. Plaintiff's duties included developing and implementing health and safety policies and procedures, conducting district health and safety training, reviewing and coordinating workers' compensation claims and paperwork on behalf of injured employees and scheduling inspections.

21. When Plaintiff became aware he was out of disability leave, he requested to use vacation time until his return.

22. On November 26, 2019 Plaintiff received a voicemail message from Nequinne Chielo, Business and Human Resources Administrator stating that Plaintiff's request for a very brief period of additional leave had been denied and that Defendant was in the process of disability separating Plaintiff.

23. Nequinne Chielo also told Plaintiff that his restrictions did not allow him to return work and that ODOT would not be approving vacation leave to cover his time off from November 28, 2019 to December 10, 2019.

24. Plaintiff received a notice ordering him to a pre-separation hearing on December 6, 2019. The notice stated that the meeting was based on his inability to perform the essential functions of his position.

25. On December 6, 2019 Plaintiff received a call stating that he was to return to work on December 9, 2019.

26. Plaintiff returned to work on December 9, 2019 without any restrictions from his physician.

27. Since returning to work on December 9, 2019, Plaintiff has been assigned a working schedule, taken off night shift, told he talks too loud and was not allowed to have sign in sheets.

28. Prior to this return to work on December 9, 2019, Plaintiff never had a set schedule. However, after his return to work, Plaintiff was required to work 7:30am to 4:30pm precisely. His position description says "hours may vary based on operational needs".

29. Because District 12 worked day and night shifts all year, it was often necessary for Plaintiff to work outside of the position description hours, therefore he did not have a set schedule.

30. Patrice Yacko also eliminated a night-shift employee, thereby severely curtailing and limiting Plaintiff's role as a supervisor and requiring him to be available 24/7. The elimination of this position also affected Plaintiff's supervisory role as it relates to completing accident and injury cases.

31. Ms. Chielo admonished Plaintiff for his loud voice; she told him repeatedly he needed to watch his voice and tone; other similarly-situated non-white and non-disabled employees are not admonished when they raise their voices.

32. On January 9, 2020, Patrice Yacko refused to allow Plaintiff to inspect a safety issue on a job site after initially telling him he could adjust his hours and then later telling him not to go.

33. Plaintiff has been forced to use flex time instead of comp time, while others, including Patrice Yacko, are allowed to use comp time. Unlike other similarly-situated black, non-disabled employees, Plaintiff has been forced to take calls after hours and is not compensated appropriately.

34. Patrice Yacko forced Plaintiff to cancel approved personal leave on January 31, 20/20 and made him submit vacation leave for January 31, 2020, in the amount of 1.2 hours to avoid giving him comp time.

35. In addition, Plaintiff has experienced unabated retaliation and differential treatment on the basis of his race and disability since returning to work in December 2019 to the present, including: being assigned a different and less preferred work schedule,

being removed from decision-making processes that directly affect his job and his subordinates, having his duties changed with respect to Safety Tailgate Talks, being prevented from completing his new-hire orientation presentation, being forced to create an entirely new presentation that was not necessary, being prevented from performing site inspections, being the subject of unnecessarily harsh critiques of his work, including his Safety Business Work Plan, being forced to respond to calls after hours when he is not compensated for his time, being denied comp time and told to flex hours worked overnight, being reprimanded by management, including Yacko, for doing his job, including reporting accidents; being reprimanded by Yacko for finding a safety violation at the Warrensville Garage; being reprimanded in general for asking questions of management and being reprimanded specifically for asking a question about radon testing; being taken off night shift, being told by management that he talks too loudly, not being allowed to have sign-in sheets; additionally, whenever Plaintiff worked overtime, Defendant forced Plaintiff to adjust his leave hours so that ultimately Plaintiff was not compensated for overtime, as were similarly-situated black, non-disabled employees.

36. From the time Ms. Yacko threatened his job to the present, Plaintiff complained repeatedly to ODOT management, the Department of Administrative Services and to the EEOC regarding his employment situation and the fact that he was being treated differently on the basis of his race and disability; Defendant retaliated against Plaintiff constantly, though Defendant's retaliatory conduct seemed to worsen after Plaintiff filed complaints with DAS and the EEOC in June 2019.

## COUNT ONE
## Family and Medical Leave Act Interference

Case: 1:20-cv-02808-DAP  Doc #: 1  Filed: 12/21/20  7 of 11.  PageID #: 7

37. Plaintiff incorporates the above paragraphs as if fully rewritten herein.

38. Plaintiff worked for Defendants for more than one full year, making him an eligible employee under 29 U.S.C. § 2611.

39. Defendant is an "eligible employer" under 29 U.S.C. § 2611.

40. Plaintiff was entitled to leave under 29 U.S.C. § 2612.

41. Plaintiff gave Defendants notice of his intention to take leave and/or Defendants were aware of his intent.

42. Defendants constructively denied and interfered with Plaintiff's ability to meaningfully pursue benefits under the Family and Medical Leave Act (FMLA) by, among other things, denying him the opportunity to have a slightly extended leave while allowing other similarly-situated non-white, non-disabled employees the opportunity to do so, changing Plaintiff's job duties, retaliating against Plaintiff for taking time off, as described hereinabove in paragraphs 1-36 hereinabove, and reducing Plaintiff's pay because he took leave.

43. Defendants therefore violated the parameters of the FMLA.

44. As a result, Plaintiff has been damaged and is entitled to front pay, back pay, out of pocket expenses, liquidated damages in the form of two times his actual damages, fees and costs.

## COUNT TWO
### Family and Medical Leave Act Retaliation

45. Plaintiff incorporates the above paragraphs as if fully rewritten herein.

46. Plaintiff availed himself of his protected rights under the FMLA by notifying Defendants of his intent to take leave and/or Defendants were aware of his intent.

47. Defendants retaliated against Plaintiff for for attempting to pursue his rights under the FMLA.

48. Specifically, defendant constructively denied and interfered with Plaintiff's ability to meaningfully pursue benefits under the Family and Medical Leave Act (FMLA), and retaliated against him specifically because he attempted to use his FMLA by changing his job duties, changing his schedule, reducing his pay, not allowing him to be compensated for overtime, treating him differently and less preferentially than other employees who did not take leave, not allowing him to have full leave benefits, and in many other respects as described in paragraphs 1-36 hereinabove.

49. Defendant's actions constitute a violation of the FMLA.

50. As a result, Plaintiff has been damaged and is entitled to back pay, front pay, liquidated damages, out of pocket expenses, fees and costs.

### COUNT THREE
**Discrimination in violation of Title VII of the Civil Rights Act of 1964– Hostile Work Environment on the Basis of Race**

51. Plaintiff incorporates the above paragraphs as if fully rewritten herein.

52. Defendants perpetrated unlawful discrimination against Plaintiff on the basis of his race by treating him differently and less preferentially than similarly-situated African-American employees, to wit, berating him; humiliating him; not allowing him to use vacation time when other similarly-situated employees did; refusing to work cooperatively with him; forcing him to "prove himself" on a daily basis; treating him rudely and harshly while exhibiting respect toward black employees; verbally attacking his performance on an almost daily basis while others were left alone; refusing to allow him a short extended period of leave to cover his time off when other similarly-situated black

employees were afforded such accommodations, refusing to compensate Plaintiff appropriately for overtime, threatening Plaintiff with termination, retaliating against Plaintiff for taking time off by changing his job duties and his schedule, and otherwise discriminating against Plaintiff on the basis of his race related to the hire, tenure, terms, conditions and privileges of his employment and/or any matter directly or indirectly related to his employment as described hereinabove in paragraphs 1-36.

53. Defendants' conduct demonstrated actual malice, evil motive or intent, hatred or a reckless or callous indifference to Plaintiff's federally-protected rights.

54. For the foregoing reasons, Defendant is liable to Plaintiff for compensatory damages, including lost wages, and punitive damages.

## COUNT FOUR
### Discrimination in violation of the American with Disabilities Act– Hostile Work Environment on the Basis of Disability

55. Plaintiff incorporates the above paragraphs as if fully rewritten herein.

56. Plaintiff is a qualified individual with a disability, to wit, his back injury, an injury that affects major life activities such as standing and sitting; Plaintiff is able to perform the essential functions of his job.

57. Plaintiff sought reasonable accommodations of a slightly extended leave or the ability to return to work with minor accommodations that did not affect his job duties, pursuant to the American with Disabilities Act, a federal statute with which Defendant is obliged to comply.

58. Defendant perpetrated unlawful discrimination against Plaintiff on the basis of his disability by rejecting his requests for reasonable accommodations and instead attempting to disability separate him; treating him differently and less preferentially than

similarly-situated able-bodied employees, to wit, berating him; humiliating him; not allowing him to use vacation time when other similarly-situated employees did; treating him rudely and harshly; verbally attacking his performance on an almost daily basis while others were left alone; refusing to pay Plaintiff for overtime, changing Plaintiff's work schedule and duties, and otherwise discriminating against Plaintiff on the basis of his disability related to the hire, tenure, terms, conditions and privileges of his employment and/or any matter directly or indirectly related to his employment as described hereinabove in paragraphs 1-35.

59. Defendants' conduct demonstrated actual malice, evil motive or intent, hatred or a reckless or callous indifference to Plaintiff's federally-protected rights.

60. For the foregoing reasons, Defendant is liable to Plaintiff for compensatory damages, including lost wages, and punitive damages.

## COUNT FIVE
**Discrimination in violation of Title VII of the Civil Rights Act of 1964– Retaliation**

61. Plaintiff incorporates the above paragraphs as if fully rewritten herein.

62. Plaintiff repeatedly reported Defendant's discriminatory conduct on the basis of his race and disability to management, DAS, and EEOC by filing verbal and written complaints.

63. In response to Plaintiff's reports of unlawful, discriminatory behavior, Defendant continued to retaliate against Plaintiff.

64. Defendants treated Plaintiff differently and less preferentially, as described in paragraphs 1-36 above, in retaliation for undertaking the protected activity of reporting unlawful harassment.

65. Defendants are therefore liable to Plaintiff for compensatory damages, including lost wages, and punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory, liquidated and punitive damages in order to be fully and fairly compensated for injuries caused by Defendant's conduct, for costs and attorneys' fees associated with this action and/or allowed by federal statute, for prejudgment and post-judgment interest according to law, liquidated damages and out of pocket expenses and for such other relief as this Court deems appropriate, equitable and just.

Respectfully submitted,

Dated: December 21, 2020

/s/ Jessica L. Olsheski
Jessica L. Olsheski, Esq. (0078063)
Email: jessica.olsheski@justice-law.net
Olsheski Law Co., LPA
600 East Rich Street
Columbus, Ohio  43215
Telephone: (614) 252-5500
Facsimile: (614) 252-5058
Attorney for Plaintiff

## JURY DEMAND

Plaintiff hereby demands that all causes of action be tried to a jury.

/s/ Jessica L. Olsheski
Jessica L. Olsheski, Esq. (0078063)
Attorney for Plaintiff